# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**SAMUEL RICE, JR.,**

    **Plaintiff,**

**v.**　　　　　　　　　　　　　　　　　　　　　　　Case No:　6:18-cv-1673-Orl-LRH

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## MEMORANDUM OF DECISION

Samuel Rice, Jr., ("Claimant") appeals the Commissioner of Social Security's final decision denying his applications for disability benefits. (Doc. 1). The Claimant raises several arguments challenging the Commissioner's final decision and, based on those arguments, requests that the matter be reversed and remanded for further proceedings. (Doc. 19 at 9-10, 16-19, 21-29). The Commissioner argues that the Administrative Law Judge ("ALJ") committed no legal error and that his decision is supported by substantial evidence and should be affirmed. (*Id*. at 10-16, 19-21, 24-25, 27-29). Upon review of the record, the Court finds that the Commissioner's final decision is due to be **REVERSED** and **REMANDED** for further proceedings.

**I.**　　**Procedural History**

This case stems from the Claimant's application for disability insurance benefits and supplemental security income. (R. 193-200). The Claimant originally alleged a disability onset date of February 10, 2015. (R. 193, 195). The Claimant's applications were denied on initial review and on reconsideration. The matter then proceeded before an ALJ. Several weeks prior to the hearing before the ALJ, the Claimant amended his alleged disability onset date to February 3,

2016 – which was the date on which he was involved in a motor vehicle accident. (R. 173-75).[1]
After the hearing (R. 29-59), the ALJ entered a decision on November 9, 2017 denying the Claimant's applications for disability benefits. (R. 15-22). The Claimant requested review of the ALJ's decision, but the Appeals Council denied his request. (R. 1-3). This appeal followed.

**II.    The ALJ's Decision**

At the beginning of the ALJ's decision, he set forth the procedural history of the matter, stating, in relevant part, that the Claimant alleged a disability onset date of February 10, 2015. (R. 15). The ALJ, however, never mentions the Claimant's amended disability onset date, February 3, 2016, in the decision. (*See id*.). Instead, the ALJ proceeded through the five-step sequential evaluation process[2] relying on the original (but incorrect) disability onset date of February 10, 2015. (R. 17, 22).

The ALJ found that the Claimant suffered from the following severe impairments: degenerative disc disease of the lumbar and cervical spine with radiculopathy; status post cervical discectomy; diabetes mellitus with polyneuropathy; and osteoarthritis of the left knee. (R. 18). The ALJ also found that the Claimant suffered from the following non-severe impairments: hypertension; dyslipidemia; and a goiter. (*Id*.). The ALJ, however, determined that the Claimant did not have an impairment or combination of impairments that met or medically equaled any listed

---

[1] The Claimant's administrative counsel also noted the amended onset date at the beginning of the hearing. (R. 34).

[2] The five steps in a disability determination include: (1) whether the claimant is performing substantial, gainful activity; (2) whether the claimant's impairments are severe; (3) whether the severe impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant can return to his or her past relevant work; and (5) based on the claimant's age, education, and work experience, whether he or she could perform other work that exists in the national economy. *See generally Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004) (citing 20 C.F.R. § 404.1520).

impairment. (*Id*.).

The ALJ next found that the Claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b)[3] with the following specific limitations:

> [T]he claimant can lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently. He can sit for 6 hours, stand for 6 hours and walk for 6 hours in an 8-hour workday. He can sit, stand and walk for up to 6 hours each out of an 8-hour workday. He can operate foot controls and hand controls frequently bilaterally. He can reach in all directions, including overhead, frequently with the bilateral upper extremities. He can frequently handle, finger and feel with the bilateral extremities. He can climb ramps and stairs occasionally, but never ladders, ropes or scaffolds. He can occasionally balance, stoop, kneel, crouch and crawl. He can have occasional exposure to extreme cold and vibration. His other environment[al] limitations include no exposure to hazards, such as unprotected heights and moving machinery.

(*Id*.). In light of this RFC, the ALJ found that the Claimant is unable to perform his past relevant work. (R. 20). However, the ALJ did find that the Claimant could perform other work in the national economy, including bottling line attendant, mail clerk, and cashier. (R. 21). In light of these findings, the ALJ concluded that the Claimant was not disabled between his original (but incorrect) disability onset date (February 10, 2015) and the date of the ALJ's decision (November 9, 2017). (R. 22).

## III. Standard of Review

The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings of fact are supported by

---

[3] Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm it if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## IV. Analysis

The Claimant raises the following assignments of error: 1) the ALJ erred by relying on the wrong alleged disability onset date and medical opinions dated prior to the amended disability onset date; 2) the ALJ failed to consider and weigh Dr. Daniel R. Spurrier's opinion; 3) the ALJ erred by not including all of his limitations in the RFC determination; and 4) the ALJ erred by not considering the cumulative impact of his impairments. (Doc. 19 at 9-10, 16-19, 21-27). The first assignment of error is dispositive of this appeal and, therefore, the Court will focus on that assignment of error.

### A. The Disability Onset Date

The Claimant raises two distinct arguments. First, the Claimant contends that the ALJ erred by not assessing his RFC from the amended disability onset date (February 3, 2016) on forward. (*Id.* at 9). Second, the Claimant contends that the ALJ erred by relying on medical opinions from an examining source (Dr. Alex Perdomo) and a non-examining source (Dr. Efren Baltazar) because

those opinions were not entitled to significant weight since they predated the amended onset date. (*Id*. at 9-10).

In response, the Commissioner contends that the ALJ "fully reviewed the evidence and provided substantial evidence for his RFC evaluation." (*Id*. at 11). In support, the Commissioner points to various portions of the medical record, some of which the ALJ did not cite or discuss in his decision, that supported the ALJ's RFC determination. (*Id*. at 11-15). Further, the Commissioner contends that the ALJ did not err in considering and relying on Drs. Perdomo's and Baltazar's opinions because even though they predated the amended onset date the opinions were still relevant in assessing the Claimant's RFC. (*Id*. at 15-16).

The ALJ is tasked with assessing a claimant's RFC and ability to perform past relevant work. *Phillips*, 357 F.3d at 1238. The RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis*, 125 F.3d at 1440.

The ALJ's reliance on the wrong disability onset date does not, in and of itself, require reversal because the ALJ did consider some evidence dated after the operative onset date. *See Amick v. Soc. Sec. Admin., Comm'r*, No. 2:18-cv-666-SGC, 2019 WL 4673949, at *5 (N.D. Ala. Sept. 25, 2019) (finding the ALJ's reliance on the wrong disability onset date did not warrant reversal because the ALJ considered evidence that was inclusive of the period between the amended disability onset date and the date of her decision.). The issue with the ALJ's reliance on the wrong onset date instead arises from his focus on evidence dated prior to the February 3, 2016 amended onset date, to the almost complete exclusion of the medical evidence dated after February 3, 2016.

The ALJ's decision contains a brief discussion of some of the medical evidence pertaining to the Claimant's impairments. (R. 19-20). Specifically, the ALJ discusses opinions from Drs. Perdomo and Baltazar, both of whom rendered opinions prior to February 3, 2016. (*Id*.). The ALJ

assigned Dr. Perdomo's opinion – which essentially limited the Claimant to medium work – partial weight because subsequent medical records, including an MRI and evidence of a syncopal episode, supported greater limitations. (*Id.*). The ALJ assigned Dr. Baltazar's opinion – which limited the Claimant to light work – great weight because Dr. Baltazar has "program knowledge" and his opinion is consistent with the record as a whole. (R. 20). Ultimately, it appears that the ALJ did not rely upon Dr. Perdomo's opinion, but instead relied on Dr. Baltazar's opinion, an X-ray of the Claimant's left knee (which occurred in April 2015),[4] and an MRI of his spine (which occurred on February 10, 2016) showing several disc herniations and spinal stenosis to support his RFC determination. (*Id.* ("In sum, the above residual functional capacity assessment is supported by the determination by Dr. [Baltazar] and diagnostic test."); *see also* R. 328, 395-96).[5]

The Court finds that the ALJ did not err when he considered evidence dated prior to February 3, 2016. *See Harris v. Astrue*, No. 8:10-cv-2877-T-27AEP, 2012 WL 868801, at *4 (M.D. Fla. Feb 24, 2012) (finding the ALJ properly supported his findings with medical records prior to and after the alleged disability onset date). However, the Court has serious concerns as to whether the ALJ

---

[4] The Claimant's knee X-ray appears to have been taken on or about April 29, 2015, near the time of Dr. Perdomo's May 11, 2015 examination. (*See* R. 328-331).

[5] It appears the ALJ may have also relied on the Claimant's activities of daily living, including "self-care activities, shop[ping], cook[ing], clean[ing] and work in a medium construction job." (R. 20). To the extent the ALJ relied on this evidence in reaching the RFC determination, the Court notes that this reason is not entirely supported by substantial evidence because it suggests that the Claimant consistently performed medium construction work during the relevant period. This conclusion appears to stem from the ALJ's reliance on the wrong onset date, because there was evidence in the form of Dr. Perdomo's May 2015 examination report that the Claimant was consistently working in construction after February 10, 2015. (R. 329). However, after the amended February 3, 2016 onset date, the record shows that the Claimant only performed one day of construction work (the day he suffered a syncopal event). (R. 36-37, 454).

considered all of the relevant evidence in determining the Claimant's RFC, and in particular whether he considered evidence dated *after* February 3, 2016.

The Court's attention is drawn to the ALJ's reliance on Dr. Baltazar's opinion.[6] Dr. Baltazar's opinion was rendered several months before the Claimant's amended onset date, therefore he did not have an opportunity to consider the apparent change in the Claimant's condition caused by the subsequent motor vehicle accident. The ALJ does not discuss this fact. Indeed, other than the February 10, 2016 MRI, the ALJ does not discuss much of the evidence from February 3, 2016 to the present: the ALJ nowhere mentions the motor vehicle accident; he does not ever identify the February 3, 2016 amended onset date; and he does not discuss most of the medical evidence that postdates February 3, 2016. (R. 18-20). For example, the ALJ ignores the Claimant's treatment with Dr. Spurrier, a neurosurgeon, who performed a C6-7 anterior cervical discectomy and total disc replacement on the Claimant in September 2016. (R. 614-16).

The failure to discuss so much of the record evidence tends to undermine the ALJ's determination that Dr. Baltazar's opinion is entitled to great weight because it is consistent with the record as whole.[7] How can Dr. Baltazar's opinion be consistent with the entire record when the ALJ fails to consider, or even mention, a large portion of the evidence dated after February 3, 2016? Accordingly, under the unique circumstances of this case, the Court finds that the ALJ's decision to

---

[6] The Claimant also contends the ALJ erred by relying on Dr. Perdomo's opinion. While the ALJ considered that opinion, he only assigned it partial weight. Further, the evidence the ALJ eventually cites as supportive of his RFC determination omits Dr. Perdomo's opinion. Accordingly, it does not appear that the ALJ relied on Dr. Perdomo's opinion, and the Court finds the Claimant's argument on this point unavailing.

[7] The Court recognizes that the ALJ also assigned Dr. Baltazar's opinion great weight because he has "program knowledge." (R. 20). However, it is unclear what the ALJ means by that or why it supports the ALJ's conclusion. As such, the Court cannot say that having "program knowledge," in and of itself, is enough to support the weight the ALJ assigned to Dr. Baltazar's opinion.

assign great weight to Dr. Baltazar's opinion is not supported by substantial evidence. *See Lanza v. Berryhill*, No. 6:17-cv-384-Orl-JBT, 2017 WL 11500527, at *1-2 (M.D. Fla. Sept. 27, 2017) (finding the ALJ erred in giving great weight to examining physician's opinion rendered two years before the operative onset date because the ALJ did not address the timing of the opinion in relation to the onset date, the physician did not review any medical records from the relevant period, and there was an arguable worsening in the claimant's condition following the opinion); *see also Santos v. Soc. Sec. Admin., Comm'r*, 731 F. App'x 848, 856 (11th Cir. 2018) (finding treatment notes, even considered as medical opinions, were of "limited relevance" to the claimant's disability claim because they predated the disability onset date);[8] *cf. Harris*, 2012 WL 868801, at *4 (finding the ALJ did not err in giving great weight to examining physician's opinion rendered before the operative onset date because the ALJ did not rely solely on that opinion in formulating the claimant's RFC but also relied on other evidence postdating the onset date, including other medical opinions).

In reaching this conclusion, the Court is mindful that the ALJ is not required to refer to every piece of evidence in his decision. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). However, the ALJ must still say enough in his decision to show that he considered the Claimant's condition as a whole. *Id*. The Court is not persuaded that the ALJ did so here. While the ALJ does cite to a few pieces of evidence that postdate the amended onset date, there are many medical records, including the Claimant's treatment with Dr. Spurrier, that the ALJ fails to cite or discuss and which arguably show a worsening of the Claimant's condition following Dr. Baltazar's opinion. The failure to address such evidence again appears to stem from the ALJ's reliance on the incorrect onset date and evidences a failure to consider all the record evidence in determining the Claimant's

---

[8] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority. *See* 11th Cir. R. 36-2.

RFC. The Court therefore finds that the ALJ's consideration of the wrong onset date, his reliance on Dr. Baltazar's opinion, and the dearth of citation and/or discussion of evidence postdating the amended onset date demonstrate that the ALJ did not consider the record as a whole in determining the Claimant's RFC.

As a final matter, the Commissioner appears to argue that notwithstanding the issues discussed above the ALJ's RFC determination is supported by substantial evidence. (Doc. 19 at 11-15). The Commissioner cites to various medical records postdating the amended onset date, many of which the ALJ did not cite to or discuss in his decision. (*Compare* Doc. 19 at 11-15 *with* R. 19-20). The Court, however, cannot not affirm the Commissioner's decision based on such *post hoc* rationalization. *See, e.g.*, *Dempsey v. Comm'r of Soc. Sec.*, 454 F. App'x 729, 733 (11th Cir. 2011) (A court will not affirm based on a post hoc rationale that "might have supported the ALJ's conclusion.") (quoting *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)). Accordingly, the Court concludes that this matter must be reversed and remanded so the ALJ can reassess the Claimant's applications for benefits using the correct onset date and consider all of the medical evidence of record, especially that which postdates February 3, 2016.

### B. The Claimant's Other Assignments of Error

The Claimant also contends that the ALJ erred by not considering and weighing Dr. Spurrier's opinion, not including all his limitations in the RFC determination, and not considering the cumulative impact of his impairments. (Doc. 19 at 16-19, 21-27). The Court declines to rule on these assignments of error because the ruling on the first issue is dispositive of this appeal. *See Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand the ALJ must reassess the entire record); *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 963 n.3 (11th Cir. 2015) (no need to

analyze other issues when case must be reversed due to other dispositive errors). On remand, though, the ALJ should expressly consider and weigh Dr. Spurrier's opinion (R. 628-29).

**V.  Conclusion**

Accordingly, it is **ORDERED** that:

1. The Commissioner's final decision is **REVERSED** and **REMANDED** for further proceedings consistent with this Order pursuant to sentence four of 42 U.S.C. § 405(g).

2. The Clerk is **DIRECTED** to enter judgment in favor of the Claimant and against the Commissioner, and to close the case.

**DONE** and **ORDERED** in Orlando, Florida on March 12, 2020.

*/s/ Leslie R. Hoffman*

LESLIE R. HOFFMAN
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

The Honorable Eric S. Fulcher
Administrative Law Judge
c/o Office of Disability Adjudication and Review
SSA ODAR Hearing Ofc.
3505 Lake Lynda Dr.
Suite 300
Orlando, FL 32817-9801